OPINION OF THE COURT
Gloria Goldstein, J.
Defendant moves to dismiss the indictment on the ground that he was denied his right to a speedy trial pursuant to CPL 30.30.
Based upon the motion papers, all relevant court minutes *736 and the credible testimony adduced at a hearing before this court, the following findings of fact and conclusions of law are made:
On September 27, 1989, defendant was arrested and charged with criminal possession of a weapon in the third degree. On November 21, 1991, defendant was advised, in open court, that an indictment had been filed against him. He was further subsequently notified, by mail, of his scheduled arraignment date for December 4, 1989. On December 4, 1989, defendant failed to appear and a warrant was issued for his arrest.
On February 12, 1990, Detective George Vaught of the Kings County Warrant Squad was assigned this case. He attempted to locate the defendant by various means of inquiry, including, a visit to the home of defendant’s mother (listed as defendant’s residence in the arrest report), as well as to the homes of others, including defendant’s aunt, and defendant’s girlfriend.
On February 20, 1990, on his first visit to defendant’s mother’s home, Detective Vaught was advised by defendant’s mother that defendant no longer lived there and that she believed he was living somewhere in Harlem with his girlfriend. After a subsequent postal check revealed that defendant was still receiving mail at his mother’s residence, Detective Vaught paid a return visit to defendant’s mother. She then told the detective that defendant had stopped by and that she had informed him of the fact that there was an outstanding warrant for his arrest. She further told him to contact Detective Vaught at the Kings County Warrant Squad since Vaught had earlier left his card with defendant’s mother.
On March 19, 1990, Detective Vaught visited defendant’s aunt’s apartment at 180 Troy Avenue, Brooklyn, New York, an address to which the Human Resources Agency had been forwarding welfare checks. Defendant’s aunt told the detective that defendant did not live there, and that she further had no idea of where he resided. The detective again left his card and requested that he be apprised of defendant’s whereabouts if he appeared there at any time.
On October 8, 1990, Detective Vaught visited 120-22 144th Street in Queens, the address, according to the original arrest report, to which defendant had first placed a telephone call when he was initially placed in custody. Ms. Pandella Robinson, a resident at that address, informed the detective that *737 defendant was a friend of hers and that she had heard that he had moved to the south with his wife.
All efforts to locate defendant, including Corrections Department and Department of Motor Vehicles searches, proved futile. Defendant remained missing and unaccounted for until January 16, 1991, when he was picked up for speeding in Newton County, North Carolina. The North Carolina authorities advised that they would release defendant that same afternoon unless extradition proceedings were instituted.
Assistant District Attorney Barry Aaron, head of the Kings County Extradition Bureau, was contacted, but determined that extradition proceedings would not be commenced. Defendant was released and remained at large until 1991, when he was arrested in New York and was involuntarily returned on the outstanding warrant in this case. The within motion was filed on August 7, 1991.
Defense counsel urges that the dispositive period of delay for the speedy trial motion, to wit, from the warrant of the defendant on December 4, 1989, to his return on July 10, 1991, should be charged to the People based upon their lack of due diligence in locating and apprehending defendant, and, as a result thereof, defendant was denied a speedy trial.
CPL 30.30 does not require a showing of due diligence when defendant’s location is unknown and he is attempting to avoid apprehension (CPL 30.30 [4] [c]; People v Jackson, 142 AD2d 597; People v Walker, 133 AD2d 2, 3; People v Banham, 175 AD2d 166). In the case at bar, the evidence clearly establishes that defendant was personally advised, in open court, of the pending indictment against him, and was subsequently sent mail notification to appear for his arraignment on the said indictment for a date certain. Defendant, however, failed to appear.* (See, People v Jackson, 150 AD2d 609, 610, lv denied 74 NY2d 811; People v Mitchell, 106 AD2d 478.)
The warrant officer's testimony revealed that defendant moved from his mother’s home, listed as his residence at the time of his arrest, and that the mother and other relatives were unaware of his whereabouts. The evidence established that defendant had personal knowledge of those charges pending against him and further of the outstanding warrant for *738 his arrest, having been so advised by his mother. Shortly thereafter, defendant left the jurisdiction.
While Detective Vaught’s investigative efforts constitute due diligence in any event, the court finds that, under these circumstances, due diligence was not required (People v Lugo, 140 AD2d 715; People v Hutchenson, 136 AD2d 737; People v Taylor, 127 AD2d 714).
Moreover, under the facts of this case, the court finds that the People’s failure to extradite defendant when he was briefly detained on a speeding violation in North Carolina should not now inure to defendant’s benefit by rendering the period of delay thereafter chargeable to the People.
While CPL 30.30 (4) (e) requires that the People be charged with delays resulting from defendant’s incarceration in another jurisdiction where the People have failed to exercise diligence in obtaining defendant’s presence for trial, the court believes it would be a misreading of the statute and an injustice to apply that language to the facts of this case.
In prior cases where subdivision (4) (e) was found to be controlling, defendant remained incarcerated for the duration of the period sought to be excluded (People v Spruill, 47 NY2d 869; People v McLaurin, 38 NY2d 123; People v Billups, 105 AD2d 795; People v Medina, 104 AD2d 905; People v Melendez, 92 AD2d 904; People v Trudo, 88 AD2d 1091; People v Donahue, 66 AD2d 801; People v White, 51 AD2d 221). In a situation of that nature, it could truly be stated that the delay "resulted from” the People’s failure to produce defendant. A defendant, innocent of outstanding charges and eager to defend himself, but incapable of doing so because he remains trapped in the jail of a foreign jurisdiction, should not be prejudiced by the People’s failure to exercise due diligence in producing him. This, however, is a far cry from the facts in the case at bar. Here, the delay was not caused by defendant’s festering incarceration in a foreign jail, but rather by the voluntary and affirmative actions of defendant himself. Defendant was briefly detained for a portion of one day, and thereafter resumed his fugitive status, remaining at large until he was arrested in New York almost six months thereafter. The People’s failure to institute extradition proceedings on the single day defendant was detained should not extend to this subsequent delay.
As Assistant District Attorney Aaron testified, it is an unfortunate reality that due to limited resources and other *739 financial constraints, not all cases can be the subject of extradition. Each file must be reviewed and choices made.
A defendant who has absconded, however, and remains at large after a total awareness of the issuance of the arrest warrant, should not be rewarded or otherwise gain a "windfall” based upon his voluntary assumption of a fugitive status.
While the court is aware of the State’s interest in the speedy adjudication of pending indictments before witnesses and evidence disappear, or memories fade, that concern is relevant where the prosecution has been negligent, or, through careless oversight, has delayed by failing to produce a defendant. Where the prosecution, constrained by limited resources, cannot extradite, and defendant remains free as an absconder thereafter, it is illogical to suggest that it is in the best interests of the State that the indictment be dismissed. "To charge the People with postreadiness fault within such a context would be to reward defendants who deliberately flout the court’s process * * * as a means of 'exploiting an already overburdened criminal justice system’ ”. (People v Myers, 171 AD2d 148, 152; People v Garrett, 171 AD2d 153.)
For the aforementioned reasons, the court finds the period from December 4, 1989 to July 10, 1991, to be excludable. The People are chargeable with 68 days of delay, from the filing of the felony complaint to December 4, 1989, and 28 days from July 10, 1991 to the filing of the within motion, and, accordingly, are within the 181-day ready period applicable to this case (People v Jones, 66 NY2d 529).
Defendant’s motion is denied in its entirety.

 The court would note defendant’s familiarity with the criminal justice system, having four prior arrests for robbery in the second degree, two arrests for criminal possession of stolen property, an arrest for assault in the first degree and criminal mischief in the third degree.